UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CASE NO. _____

DANIEL D. BACK                                                                        PLAINTIFF

v.                                                   **COMPLAINT**

INOGEN, INC. and

Serve: Corporation Service Company
421 W. Main St.
Frankfort, KY 40601                                                        DEFENDANT

********

Comes the Plaintiff, Cody Back, by and through counsel, and for his Complaint against Defendants, Inogen, Inc. and Rob, hereby states as follows:

## PARTIES

1. Plaintiff, Daniel D. Back, (herein "Plaintiff" or "Cody"), is a citizen and resident of Madison County, Kentucky.

2. Defendant, Inogen, Inc. (hereafter "Inogen"), is a foreign corporation with its principal office located at 859 Ward Dr., Ste. 200 Goleta, CA 93111 and its registered agent located at 421 West Main Street, Frankfort, Kentucky 40601.

## JURISDICTION

3. Plaintiff repeats, realleges, and reasserts each and every foregoing paragraph as if fully stated herein.

4. The amount in controversy exceeds the jurisdictional minimums of this Court.

5. Throughout all relevant times, Inogen maintained significant business contacts with the Commonwealth of Kentucky.

6. Inogen sells oxygen for patients that require such treatment. Their services, which were performed by Cody in Kentucky, involve taking care of patients that require oxygen, distribution, and patient visits which required Cody to set up oxygen machines for Inogen's patients.

7. Cody was retained by Inogen for the specific purpose of transacting business within the Commonwealth of Kentucky.

8. Cody worked from his home in Madison County, Kentucky, and traveled across the Commonwealth conducting business on behalf of Inogen. Inogen hired and retained Cody specifically for this purpose.

9. Cody received, distributed, and set up oxygen machines for patients in the Commonwealth of Kentucky.

10. Inogen frequently contacted Cody in Kentucky through phone, email, text, and Microsoft Teams in order to facilitate Cody conducting business on the company's behalf in Kentucky.

## FACTS

11. Plaintiff repeats, realleges, and reasserts each and every foregoing paragraph as if fully stated herein.

12. Cody worked for The Ashfield Company, which was acquired by Inogen on March 1, 2024. At that time, he became an employee of Inogen.

13. The Ashfield Company had 65 sales representatives on staff. Inogen retained only 26 of these employees, which included Cody. He remained employed with Inogen due to his outstanding sales numbers and performance.

14. Cody was the only sales representative working for Inogen in the Commonwealth of Kentucky and handled business in this state on Inogen's behalf.

15. Up until August 30th, 2024, Cody Back, Plaintiff, and Rob Meeder were friendly coworkers at Inogen. On that day, Rob called Cody and asked him why he was at his home office at 3 pm instead of out in the field working. Cody explained to Rob that he was in the process of loading inventory from his home to set up patients that required immediate attention.

16. Rob then proceeded to reprimand Cody for 2 hours by going through a deep dive of all of Cody's accounts, and accused him of being a terrible employee. Cody felt as though he was being targeted at this moment and was fearful of losing his job.

17. The 2-hour call resulted in Cody not receiving his monthly bonus, because he was not able to meet with the clients with whom he was scheduled to meet.

18. On September 4th, 2024, Cody received a text message that morning from Rob asking him about a Mexican restaurant receipt from when Cody took clients out to lunch prior to Rob's employment with the company. Cody informed Rob that the Mexican restaurant had accidentally thrown the receipt away and that he had already contacted the employees who are in charge of filing the receipts. Cody also explained that it is going to be a naturally lengthy process and that nothing else was needed from him on his end. Even with confirmation from Cody about the handling of the receipt, Rob continued to harass him about this minor non-issue.

19. On September 5th and 6th, 2024, Cody took time off from work because he needed a mental break from the harassment from Rob.

20. On September 11th, 2024, Rob began to question Cody again about the receipt from the Mexican restaurant and why the situation had not been handled yet. Cody provided the proof of him contacting the employees and informed him that it is still going to take some time to get processed. Rob had brought this situation up again because it was a means to target and harass him.

21. On September 12th, 2024, Rob contacted Cody and stated that he was showing red flags and needed to have a one-on-one meeting to discuss this matter. Cody called Rob, and Rob went on to say that he doesn't believe Cody about the matter of the Mexican restaurant receipt. Cody informed Rob yet again that all expense reports had been covered, except for the Mexican restaurant, and explained why it had not been handled yet.

22. This call went on for another 2 hours, and Rob accused Cody of lying. Cody told Rob that he felt as though Rob was harassing him and that he was being honest about the situation. Rob took offense, but Cody explained that he just wanted to handle this like grown men and resolve the issue. The phone call ended on a positive note, and Cody felt like that was the start of a resolution between them.

23. From September 13th to the 18th, Cody noticed that Rob was being short-tempered and aggressive with him.

24. On September 19th, 2024, Rob says to Cody that there is a flag from the Compliance Department for a Red Lobster receipt from a few weeks ago. Cody did a takeout order at Red Lobster for a lunch and learn for a client and electronically uploaded the receipt.

25. Cody did a delivery order at Red Lobster for a client and ordered roughly $350 of his $1,500 monthly budget for lunch and learns with clients. Whenever he picked up the order,

he tipped the bartender 20%, since he had an appreciation for food industry workers, and it was a common practice for him. Cody asked for a typical receipt, but since the restaurant was out of printer paper, they printed it out on a piece of copy paper. Cody proceeded to electronically post the receipt, but lost track of the paper copy since he felt as though he didn't need it anymore, since it was already documented, and Rob had already approved it.

26. Cody explained the situation laid out above to Rob, but Rob once again baselessly accused Cody of lying. Rob acknowledged that the original receipt that Cody uploaded was documented, but he still requested the paper receipt. Cody explained the reason why he no longer had the paper receipt in his possession, but again, Rob was still requesting the original receipt.

27. Rob continued to harass Cody about the issue, even though he had provided ample documentation.

28. In a subsequent conversation on September 19th, 2024, Rob informed Cody that the Compliance Department would be reaching out to him regarding the Red Lobster receipt. However, the Compliance Department never reached out to Cody on this matter.

29. The next morning, on September 20th, 2024, Cody informed Rob that he would be going to Red Lobster around lunchtime to pick up the original receipt to clear up this matter. Rob requested the specific Red Lobster restaurant's information so that he could contact them himself and get the receipt. Rob then proceeded to call Red Lobster and obtained the original receipt and informed Cody that the paper copy he requested had been obtained.

30. Rob then questioned Cody about the 20% tip and asked him if that was common for him. Cody explained that he has always done so because he appreciates the workers, and that it has never been an issue previously. 20% is a standard amount to tip restaurant workers.

31. After the interaction, Cody went to Inogen's Human Resources Department to report Rob and all of the harassment he had endured. 45 minutes after communicating with HR, they reached out to have a one-on-one interview with Cody to go over the situation and brought the harassment timeline to their attention.

32. On October 3, 2024, two days after reporting the matter to HR, he received a Microsoft Teams call from HR saying that he was being terminated. HR explained that he violated the HIPAA Physician Payments Sunshine Act, but refused to give any details about the termination in spite of multiple requests by Cody.

33. On October 5th, he contacted HR to get more information as to why his termination occurred.

34. On October 11th, a non-HR representative got back to him, but continued to not disclose any information.

35. Cody asserts that his termination was the direct result of his reporting Rob's harassment to Human Resources.

## COUNT I - Retaliation

36. Plaintiff repeats, realleges, and reasserts each and every foregoing paragraph as if fully stated herein.

37. Inogen retaliated against Cody for having complained about his harassment by his supervisor to the Human Resources Department, which is a protected activity under the law of the Commonwealth.

38. Filing a Complaint with HR is a universally recognized protected activity, and termination from employment is a clear disadvantage.

39. Defendant's actions were intentional, with reckless indifference to Cody's rights and in direct response to his reports of harassment.

40. As a direct and proximate result of Defendant's wrongful acts, Cody has been wrongfully terminated from his employment and sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

## COUNT II - Harassment

41. Plaintiff, repeats, realleges, and reasserts each and every foregoing paragraph as if fully stated herein.

42. Inogen, through its agent acting in a supervisory capacity over the Plaintiff, knowingly and willfully harassed Cody by making remarks or statements to her that were either intended by him to cause emotional distress to him or, if he did not actually so intend, nevertheless knew or had reason to know that such distress would result but did not care whether it did or did not.

43. Inogen's willful and malicious treatment of Cody through its agents was intended to cause emotional distress to him.

## COUNT III – Outrage

44. Plaintiff, repeats, realleges, and reasserts each and every foregoing paragraph as if fully stated herein.

45. Defendant's conduct was outrageous and offends the generally accepted societal standards of decency and morality.

46. Defendant knew or should have known that his conduct would cause Plaintiff severe emotional distress.

47. Defendant's conduct caused Plaintiff severe emotional distress and permanent injuries.

48. Defendants' conduct was outrageous and intentional, demonstrating a wanton and reckless disregard for the well-being of the Plaintiff; entitling Plaintiff to recover compensatory and punitive damages.

WHEREFORE, Plaintiff, Cody Back, prays the Court as follows:

1. A trial of this cause of action by jury;

2. For Judgment against Defendant for all of the damages enumerated above, including compensatory, incidental, actual, consequential, attorneys' fees, costs herein expended, pre-judgment and post-judgment interest, and any and all equitable relief that may be appropriate, and

3. Any and all other relief to which this Court may deem him entitled.

Respectfully Submitted,

*/s/ Lauren R. Brooke*
*/s/ Rhey Mills*
Lauren R. Brooke
Rhey Mills
Brooke & Mills, PLLC
114 N. 2ND Street, Ste. A
Richmond, KY 40475
Lauren@brookemillslaw.com
Rhey@brookemillslaw.com
Telephone: (859)785-4010
*Attorneys for Plaintiff*